Gerrit M. Pronske
State Bar No. 16351640
Rakhee V. Patel
State Bar No. 00797213
Melanie P. Goolsby
State Bar No. 24059841
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pronskepatel.com
Email: rpatel@pronskepatel.com
Email: mgoolsby@pronskepatel.com

**COUNSEL FOR THE DEBTOR**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **MALUHIA NINE, LLC,** | § | **CASE NO. 10-30988-BJH-11** |
| | § | |
| **Debtor.** | § | **CHAPTER 11** |

## DISCLOSURE STATEMENT

**TO:** Creditors and Equity Owners of Maluhia Nine, LLC ("Maluhia Nine" or "Debtor")

Contained in the packet of documents that has been sent to you by Maluhia Nine is the Disclosure Statement (the "Disclosure Statement"), the Plan of Reorganization (the "Plan"), the Ballot for Voting on the Plan of Reorganization (the "Ballot") and the Order Approving Disclosure Statement and Fixing Time for Filing Acceptance or Rejection of Plan, Combined with Notice Thereof. Please read all of these materials carefully. Please note that in order for your vote to be counted, you must 1) include your name and address, 2) fill in, date, and sign the enclosed Ballot and 3) return it to the attorney for Debtor by the date and time specified on the Ballot.

# ARTICLE I - INTRODUCTORY STATEMENT

Maluhia Nine has filed contemporaneous hereto with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") its Plan in the above-captioned case (the "Bankruptcy Case"). Pursuant to the terms of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") this Disclosure Statement has been approved by the Bankruptcy Court. Such approval is required by statute and will not constitute a judgment by the Bankruptcy Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereby.

Any terms not defined herein shall have the meaning set forth in the Plan.

A.  DISCLAIMERS

ONLY THOSE REPRESENTATIONS SET FORTH IN THIS DISCLOSURE STATEMENT ARE AUTHORIZED BY DEBTOR. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT UNLESS ANOTHER DATE IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF. DEBTOR IS UNABLE TO GUARANTEE THAT THE INFORMATION CONTAINED IN THE PLAN AND THIS DISCLOSURE STATEMENT IS ENTIRELY WITHOUT ERROR, BUT ALL REASONABLE EFFORTS HAVE BEEN MADE TO ENSURE THAT ALL REPRESENTATIONS ARE AS ACCURATE AS POSSIBLE.

THE SOURCE OF INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS THE DEBTOR OR ITS AGENTS AND EMPLOYEES AND HAS NOT BEEN SUBJECT TO AN AUDIT UNLESS OTHERWISE SPECIFICALLY NOTED. THE STATEMENTS MADE HEREIN LIKEWISE HAVE NOT BEEN VERIFIED BY DEBTOR'S COUNSEL, ALTHOUGH AN ATTEMPT HAS BEEN MADE TO BE CONSERVATIVE AND REALISTIC. NEITHER DEBTOR NOR ITS COUNSEL REPRESENT OR WARRANT THE ACCURACY OF DISCUSSIONS CONTAINED HEREIN REGARDING EVENTS.

AS STATED PREVIOUSLY, YOU ARE URGED TO REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT IN THEIR ENTIRETY PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN TO ENSURE A COMPLETE UNDERSTANDING OF THE TRANSACTIONS CONTEMPLATED UNDER THE PLAN AND HOW THOSE TRANSACTIONS WILL AFFECT YOUR CLAIM AGAINST, OR INTEREST IN THE DEBTOR.

IF ANY IMPAIRED CLASS VOTES TO ACCEPT THE PLAN, BUT NOT ALL CLASSES ACCEPT THE PLAN, DEBTOR WILL SEEK CONFIRMATION UNDER THE CRAM DOWN PROVISION OF § 1129(B) OF THE BANKRUPTCY CODE AND HEREBY GIVES NOTICE OF INTENT TO INVOKE THE CRAM DOWN PROVISIONS OF § 1129(B) IN THAT EVENT.

B.     BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Upon the commencement of a Chapter 11 case, § 362 of the Bankruptcy Code provides for an automatic stay of all attempts to collect from a debtor any claims which arose prior to the bankruptcy filing or otherwise to interfere with a debtor's property or business.

Under Chapter 11, a debtor attempts to reorganize its business for the benefit of the debtor, its creditors, and equity security holders in the formulation of a plan of reorganization. For the first 120 days after the filing of a Chapter 11 bankruptcy petition, the debtor is the only party who may file a plan of reorganization in the bankruptcy case, which is generally referred to as "exclusivity." Once exclusivity ends, any party in interest may file a plan of reorganization. The legal requirements for court approval, called "confirmation," of a plan are discussed on Pages 4-5 of this Disclosure Statement.

C.     THIS DISCLOSURE STATEMENT

Why You Have Received This Disclosure Statement. You have received this Disclosure Statement because the Debtor has proposed a Plan with the Bankruptcy Court in order to satisfy its debts and provide for a reorganization of the Debtor's business. The Bankruptcy Court held a hearing and approved this Disclosure Statement on [_____, 2010]. A copy of the Plan is enclosed with the materials that you have received. This Disclosure Statement, as required by 11 U.S.C. § 1125, is being provided to all known Creditors[1] and other parties-in-interest whose claims are impaired in connection with the solicitation and acceptance of the Plan proposed by Debtor.

Purpose of this Disclosure Statement. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor typical of the holders of Claims against the Debtor to make an informed judgment in exercising its right either to accept or reject the Plan.

Purpose of the Plan. The purpose of Debtor's Plan is to provide a mechanism for the reorganization of the Debtor's assets and for the payment of the Debtor's Creditors. The Plan was developed by the Debtor. The Debtor believes that the Plan is more attractive than other alternatives, such as conversion to Chapter 7 liquidation or dismissal of the Chapter 11 Case. EACH CREDITOR IS URGED TO READ THE PLAN PRIOR TO VOTING.

---

[1] Terms used in this Disclosure Statement are defined in Article II of the Plan, and the terms should be read together with those definitions.

Bankruptcy Court Approval of this Disclosure Statement. After a hearing on notice, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of the Classes being solicited to make an informed judgment about the Plan.

Sources of Information. The information contained in this Disclosure Statement has been submitted by the Debtor unless specifically stated to be from other sources. Certain of the materials contained in this Disclosure Statement are taken directly from other, readily accessible instruments or are digests of other instruments. While the Debtor has made every effort to retain the meaning of such other instruments or the portions transposed, the Debtor urges that any reliance on the contents of such other instrument should depend on a thorough review of the instruments themselves.

Only Authorized Disclosure. No representations concerning the Plan are authorized by Debtor or the Bankruptcy Court other than as set forth in this Disclosure Statement. Any representations or inducements made by any person to secure your vote which are other than herein contained should not be relied upon, and such representations or inducements should be reported to counsel for the Debtor, who shall deliver such information to the Bankruptcy Court.

Voting on the Plan. **YOUR ACCEPTANCE OF THE PLAN IS IMPORTANT.** In order to vote on the Plan, a creditor or interest holder must have filed a proof of claim or interest on or before the Bar Date, unless scheduled by the Debtor as not disputed, liquidated or contingent. Any creditor scheduled as not disputed, liquidated and not contingent is, to the extent scheduled, deemed to have filed a claim and, absent objection, such claim is deemed allowed. A creditor or interest holder may vote to accept or reject the Plan by filling out and mailing to counsel for the Debtor the Ballot which has been provided in this package of information.

In order for the Plan to be accepted by a class of creditors, more than one half in number and at least two-thirds in amount of such class of Claims must vote to accept the Plan. Only those claim holders that actually vote are considered in the calculations. In order for the Plan to be accepted by interest holders, at least two-thirds in amount of interests must vote to accept the plan. Again, only voting interest holders are considered in the calculation. You are, therefore, urged to fill in, date, sign and promptly mail and/or fax the enclosed Ballot, which has been furnished to you, to counsel for Debtor as follows:

**Gerrit M. Pronske**
**Pronske & Patel, P.C.**
**2200 Ross Avenue, Suite 5350**
**Dallas, TX 75201**
**FAX 214.658.6509**
**email: smeiners@pronskepatel.com**

**Please be sure to complete properly the form and identify legibly the name of the claimant or interest holder.**

The Bankruptcy Court has fixed [_____, 2010], as the last date by which Ballots must be served on counsel for Debtor. Except to the extent allowed by the Bankruptcy Court, Ballots that are received after such time will not be counted. Ballots of holders of impaired Claims received pursuant to this solicitation and which are signed but are not expressly voted for acceptance or rejection of the Plan will be counted as Ballots for accepting the Plan. A Ballot accepting the Plan may not be revoked, except by a Final Order of the Bankruptcy Court.

## ARTICLE II – BANKRUPTCY SUMMARY

**A.   HISTORY OF THE DEBTOR**

The Debtor, a Hawaii limited liability company formed in July 2004, was formed to acquire and hold title to real property. Maluhia Nine's principal asset is an approximately 19,014 square foot parcel of raw, undeveloped land known as Maluhia Nine situated in the Maluhia at Wailea resort condominium project located in Maui, Hawaii 96753 (the "Property").

**B.   EVENTS LEADING UP BANKRUPTCY**

The Property was originally owned by an affiliate of Maluhia Nine, M-35, LLC. The Property was assigned to Maluhia Nine on July 7, 2006.

On July 30, 2006, Maluhia Nine (then Maluhia Apartment 9, LLC) entered into a loan transaction with LaJolla Bank, FSB, the predecessor of OneWest Bank, FSB ("OneWest"), in the principal amount of $2,750,000, secured by the Property, with a maturity date of August 1, 2007.

On June 11, 2007, the maturity date of the loan was extended to August 1, 2008, and on May 1, 2008, the maturity date was extended to August 1, 2010.

On April 8, 2008, Maluhia Nine entered into the Subordinate Mortgage, Security Agreement and Financing Statement with SPCP Group, LLC ("SPCP") as additional security for a loan to PRM Jackson Pond Resort Residential Development Associates, LLC and Lake Valhalla Estates, LLC, among others.

On August 28, 2009, OneWest sent a Notice of Intention to Foreclose threatening to non-judicially foreclose on the Property if certain outstanding payments were not received by OneWest.

On February 8, 2010 (the "Petition Date"), the Debtor filed its Voluntary Petition for protection under Chapter 11 of the Bankruptcy Code in order to stay the non-judicial foreclosure of the Property and in order to use the tools and procedures provided in bankruptcy to reorganize its business.

**C.   ASSETS AND LIABILITIES AT THE TIME OF THE FILING**

Attached hereto as **Exhibit A** is a Summary of Debtor's Schedules reflecting the Debtor's estimation of its assets and liabilities as of February 8, 2010. Complete copies of the

Debtor's Schedules are available upon written request submitted to legal counsel for the Debtor via either facsimile at (214) 658-6509 or via email at smeiners@pronskepatel.com.

**D.     SIGNIFICANT EVENTS IN CHAPTER 11**

Initial § 341 Meeting of Creditors.  On April 8, 2010, the initial meeting of creditors was held and concluded pursuant to 11 U.S.C. § 341.

Employment of Legal Counsel.  On June ___, 2010, the Court entered its order approving Maluhia Nine's application to employ the law firm of Pronske & Patel, P.C. as counsel for Maluhia Nine after a hearing conducted on the application on May 27, 2010.

Post-Petition Operations of Debtor.  Each of the Debtor's Monthly Operating Reports reflecting post-petition operations through April 30, 2010 are attached hereto as **Exhibit B** and incorporated by reference herein.

## ARTICLE III - SUMMARY OF THE PLAN

**A.     OVERVIEW OF THE PLAN**

THE FOLLOWING DISCUSSION IS A GENERAL OVERVIEW OF THE PLAN ONLY.  IT IS NOT INTENDED TO MODIFY THE TERMS OF THE PLAN IN ANY WAY.  THE PLAN IS ENCLOSED WITH THIS DISCLOSURE STATEMENT.  CREDITORS ARE URGED TO READ THE PLAN IN ITS ENTIRETY IN DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN.

The Plan provides for a reorganization of all liabilities owed by the Debtor, as described herein.

**B.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

The Plan classifies and treats various classes of creditors of the Debtor's Estate.  The following is a summary of classification and treatment of creditors' claims under the Plan:

For the purpose of satisfaction of all Claims against and Interests in the Debtor, the Claims and Equity Interests are divided into the following classes:

CLASS 1: ADMINISTRATIVE CLAIMS

Class 1 Administrative Claims consist of any claim for payment of any cost or expense of administration of the Bankruptcy Case entitled to priority in accordance with §§ 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's Estate and operating its business from and after the Petition Date to and including the Confirmation Date and all allowances of compensation and reimbursement approved by the Bankruptcy Court in accordance with the Bankruptcy Code and any fees or charges assessed against the Debtor's Estate under the Bankruptcy Code.  Except to

the extent that the Holder of an Administrative Claim may otherwise agree in writing, Administrative Claims that are Allowed Claims prior to the Effective Date of the Plan shall be paid in full on or before the Effective Date of the Plan. Administrative Claims that become Allowed Claims after the Effective Date of the Plan shall be paid in full in cash on or before fourteen (14) business days following the date the Administrative Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court. For purposes of payment of Administrative Claims, any administrative claimant desiring to be paid under the Plan must file an application for allowance of Administrative Claim on or before thirty (30) days after the entry of an Order confirming the Plan or such Claimant shall be barred from asserting an Administrative Claim

### CLASS 2: PRIORITY TAX CLAIMS

Class 2 Priority Tax Claims consist of any claim that is entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code. Priority Tax Claims shall be paid by the Reorganized Debtor, up to the Allowed amount of such Claim, plus interest at the rate of 4.5% per annum accrued thereon on a quarterly basis on October 1, January 1, April 1 and July 1 of each year over a period not exceeding six (6) years after the date of assessment of the Claims, as provided in § 1129(a)(9)(C) of the Bankruptcy Code, commencing after the first full quarter following the Effective Date.

### CLASS 3: SECURED CLAIM OF OneWest

The Class 3 Claim of OneWest shall be treated as a fully Secured Claim in an amount to be determined by the Bankruptcy Court pursuant to 11 U.S.C. § 506(b) at the Confirmation Hearing. The Class 3 Claim of OneWest shall be treated as follows:

(i) <u>Assumption of OneWest Loan</u>: In conjunction with the New Financing, Debtor shall assume OneWest's indebtedness with no assumption fee, subject to the following modifications: 1) the maturity date shall be extended to April 1, 2011; 2) Debtor shall be entitled to two (2) one year extensions on the same terms provided that the loan is not in default; 3) the interest rate shall be reduced to 5.0% with 4.0% to be paid on a current basis and 1.0% to accrue on a simple, non-compounded basis and be paid at maturity; and 4) all amounts owed will be deaccelerated. Payment on the assumed OneWest loan will resume on the 10th day of the first month after Debtor's assumption of OneWest's loan has closed.

(ii) <u>Equity Owner Guarantee</u>. The Equity Owner must execute a guaranty substantially in the form of that signed by the Equity Owner at the origination of the OneWest loan. The guaranty executed by PRM Realty Group, LLC on behalf of Maluhia Nine shall be exempted from discharge in PRM Realty Group, LLC's Chapter 11 bankruptcy case.

(iii) <u>Payment of Lender Accrued Fees and Costs</u>. Debtor, with the proceeds of the New Financing, will pay OneWest's reasonably accrued fees and costs, not to exceed $30,000.00, including attorney's fees, and appraisal fees, on or before the Effective Date; provided, however, that OneWest's attorney fees shall be subject to the fee approval process under § 330 of the Bankruptcy Code in the event OneWest and Debtor cannot agree to the amount of such fees.

(iv) <u>Defaults</u>. All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be waived, and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date, and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan and changes in ownership and control effectuated by the Plan, shall also be waived.

(v) <u>Default Interest/Penalties/Charges</u>. Except as provided herein, no default interest, late charges, or other penalties or monetary compensation or fees shall be required to be paid to OneWest in connection with Debtor's assumption of the OneWest loan, the treatment provided under this Plan for Allowed Class 3 Claims, or the reorganization of Debtor and/or any change of control and ownership effectuated by the Plan.

(vi) <u>Collateral</u>. OneWest shall retain all of its liens and security interests in Debtor's assets, including the Property, granted to it pursuant to the OneWest loan documents, with the same validity, enforceability, attachment, perfection, priority, and legal rights that existed on the Petition Date.

(vii) <u>Waivers/Consents</u>. OneWest shall be deemed to consent to and approve the transactions and changes to Debtor contemplated by the Plan, including, without limitation, the payments to the holders of Allowed Claims and Allowed Administrative Claims pursuant to the Plan.

Class 3 Claims are impaired under the Plan.

<u>CLASS 4: SECURED CLAIM OF SPCP</u>

The Class 4 Claim of SPCP shall be treated as a fully Secured Claim in an amount to be determined by the Bankruptcy Court pursuant to 11 U.S.C. § 506(b) at the Confirmation Hearing. Each Class 4 Claim of SPCP shall be treated as follows:

(i) <u>Assumption of SPCP Guaranty</u>. Debtor shall assume SPCP's indebtedness with no assumption fee, subject to the following modification: SPCP shall have no right to enforce the guaranty until it has exhausted all possible remedies against the Lake Valhalla and Jackson Pond properties as set forth in the SPCP loan documents.

(ii) <u>Payment of Lender Accrued Fees and Costs</u>. Debtor, with the proceeds of the New Financing, will pay SPCP's reasonably accrued fees and costs, not to exceed $15,000.00, including attorney's fees, and appraisal fees, on or before the Effective Date; provided, however, that SPCP's attorney fees shall be subject to the fee approval process under § 330 of the Bankruptcy Code in the event SPCP and Debtor cannot agree to the amount of such fees.

(iii) <u>Defaults</u>. All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be waived, and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date, and/or the actions and

transactions contemplated by the Plan, including the payments to be made under the Plan and changes in ownership and control effectuated by the Plan, shall also be waived.

   (iv) <u>Default Interest/Penalties/Charges</u>. Except as provided herein, no default interest, late charges, or other penalties or monetary compensation or fees shall be required to be paid to SPCP in connection with Debtor's assumption of the SPCP guaranty, the treatment provided under this Plan for Allowed Class 3 Claims, or the reorganization of Debtor and/or any change of control and ownership effectuated by the Plan.

   (v) <u>Collateral</u>. SPCP shall retain all of its liens and security interests in Debtor's assets, including the Property, granted to it pursuant to the SPCP loan documents, with the same validity, enforceability, attachment, perfection, priority, and legal rights that existed on the Petition Date, except as set forth in Paragraph 5.1(b)(i) above.

   (vi) <u>Waivers/Consents</u>. SPCP shall be deemed to consent to and approve the transactions and changes to Debtor contemplated by the Plan, including, without limitation, the payments to the holders of Allowed Claims and Allowed Administrative Claims pursuant to the Plan.

  Class 4 Claims are impaired under the Plan.
  <u>CLASS 5: GENERAL UNSECURED CLAIMS</u>

Class 5 Allowed General Unsecured Claims consist of all other Allowed Claims not placed in any other Class, specifically Classes 3 and 4. Creditors holding Allowed Class 5 General Unsecured Claims shall receive 100% of their Allowed Claims out of the proceeds to be received by Maluhia Nine pursuant to the Home Construction Participation rights, or if the proceeds are less than 100% of the the total amount of the Allowed Claims of the holders of Class 5 Allowed General Unsecured Claims, a pro rata amount of the proceeds.

  Class 5 General Unsecured Claims are impaired under the Plan.
  <u>CLASS 6: EQUITY INTERESTS</u>

The Class 6 Equity Owner shall retain its interest in the Debtor, in exchange for its relinquishing certain rights to the Land Bank Participation and Home Construction Participation and its commitment to use its skill, effort, and experience to develop a home on the Property for the benefit of the Creditors. The Class 6 Claim of the Equity Owner shall be treated as follows:

   (i) <u>Land Bank Participation</u>. The Equity Owner will be entitled to 50% of the difference between (a) the value of the Property at the time of sale or refinance, and (b) the amount of OneWest's loan pursuant to the Debtor's schedules, plus any sales commissions and customary closing costs at the time of the sale or refinance of the Property.

   (ii) <u>Home Construction Participation</u>. The Equity Owner will be entitled to 90% of the difference between (a) the net sale value of the completed home on the Property after deducting sales commissions, customary closing costs, and the construction costs associated with

building the completed home on the Property, and (b) the value of the Property at the time of sale or refinance the Property subsequent to the Effective Date.

   (iii) <u>Developer Fee</u>. The Equity Owner will be entitled to a $300,000 developer fee for management of the construction of a home on the Property.

 Class 6 Interests are impaired under the Plan.

**C.** **IMPLEMENTATION OF THE PLAN**

 Debtor shall operate its business following the Effective Date and shall dedicate sufficient revenues to fund all obligations contained herein.

 <u>Development and/or Sale of the Property</u>. The Reorganized Debtor shall develop and/or sell the Property over a period of 5 years following the Effective Date.

<u>New Financing</u>. The Reorganized Debtor shall raise additional funds in the total amount of approximately $925,000. The New Financing will have the following terms:

   (b) The Reorganized Debtor shall have 120 days from the Effective Date to raise the New Financing required for the first twelve (12) months after the Effective Date to pay expenses arising under the Plan and in the ordinary course of the Reorganized Debtor's business. The Reorganized Debtor may raise the remainder of the New Financing in the following four years as required and needed on an annual basis.

   (c) The New Financing will mature on December 31, 2014.

   (d) The New Financing will be secured by a third lien mortgage on the Property with terms substantially similar to the terms of the mortgage held by OneWest on the Petition Date.

   (e) Interest will be paid at an annual rate of 8%, to be paid current from an interest reserve established out of the proceeds of the New Financing.

   (f) <u>Land Bank Participation</u>. The New Financing will be entitled to 50% of the difference between (a) the value of the Property at the time of sale or refinance, and (b) the amount of OneWest's Claim pursuant to Debtor's schedules, plus any sales commissions and customary closing costs at the time of the sale or refinance of the Property.

   (g) <u>Home Construction Participation</u>. The New Financing will be entitled to 10% of the difference between (a) the net sale value of the completed home on the Property after deducting sales commissions, customary closing costs, and the construction costs associated with building the completed home on the Property, and (b) the value of the Property at the time of sale or refinance the Property subsequent to the Effective Date.

(h) The proceeds of the New Financing will fund debt service on the OneWest loan, OneWest's fees and costs, the interest reserve established to service the New Financing, homeowner's association dues, accrued and future real estate taxes, accrued professional fees, insurance, and other property expenses.

Reorganized Debtor. Upon the Confirmation Date of the Plan, the Reorganized Debtor shall be the survivor of the Debtor and shall be vested with the property of the Debtor's Estate.

Cramdown. If any impaired class votes to accept the Plan, but not all classes accept the Plan, the Debtor will seek confirmation under the cram down provision of § 1129(b) of the Bankruptcy Code.

**D.   DISPOSITION OF CAUSES OF ACTION**

The Debtor has not yet concluded its analysis of existing claims and Causes of Action and expressly reserves the right to continue such analysis. All Claims and Causes of Action owned by the Debtor, Causes of Action that could have been brought by a Creditor on behalf of the Debtor, and all Causes of Action created by the Bankruptcy Code not expressly waived or released under the Plan may be pursued by the Reorganized Debtor for the benefit of the Creditors, as provided herein, including, but not limited to Causes of Action arising in and under Chapter 5 of the Bankruptcy Code. The Reorganized Debtor shall have the exclusive right to settle or compromise all such Causes of Action subject to Bankruptcy Court approval. Bankruptcy Court approval is not required to settle or compromise any collection activities relating to any and all accounts receivable.

**E.   EXECUTORY CONTRACTS AND LEASES**

General Assumption and Assignment. The Debtor anticipates, but does not guarantee, that all unexpired executory contracts will be assumed at Confirmation. All assumed contracts will be paid in the ordinary course of business on a going forward basis after Confirmation. All executory contracts and unexpired leases of the Debtor (including, but not limited to, those listed on the Debtor's Schedules) that are not expressly rejected on or before 90 days after the Confirmation Date or not otherwise specifically treated in the Plan or in the Confirmation Order shall be deemed to have been assumed by Debtor on the Confirmation Date. The Debtor reserves the right to file an exhibit with the Bankruptcy Court prior to the Confirmation Date rejecting any executory contract or lease.

Cure of Assumed Executory Contracts and Unexpired Leases. To the extent necessary, Debtor shall cure all defaults existing under any assumed executory contract or unexpired lease by paying the amount, if any, claimed by any party to such executory contract or unexpired lease as set forth in a proof of claim, which shall be filed with the Bankruptcy Court within fourteen (14) days after the Confirmation Date and shall be titled "Assumption Cure Proof of Claim." Alternatively, Debtor may pay such amount as may be agreed upon between Debtor and any party to such executory contract or unexpired lease, provided an Assumption Cure Proof of Claim is timely filed within fourteen (14) days after the Confirmation Date.

The Debtor shall have the right to file within sixty (60) days of the filing of an Assumption Cure Proof of Claim an objection in writing to the amount set forth in the Assumption Cure Proof of Claim and the Bankruptcy Court shall determine the amount actually due and owing in respect of the defaults.

Payment of such Claims shall be made by the Reorganized Debtor on the later of: (1) fourteen (14) days after the expiration of the sixty day period for filing an objection in respect of any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, fourteen (14) days after an order of the Bankruptcy Court allowing such Claim becomes a Final Order.

**F.    RESOLUTION OF DISPUTED CLAIMS**

Only Allowed Claims will be paid by Debtor according to the Plan. An Allowed Claim is any claim against the Debtor for which a proof of claim was timely and properly filed or is deemed to have been timely and properly filed because the Debtor has or hereafter do list such claim on its schedules as liquidated and not disputed or contingent.

Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Reorganized Debtor may file with the Bankruptcy Court objections to Claims and Interests.

If the Reorganized Debtor files an objection to a proof of claim ("Undetermined Claim"), then an Allowed Claim shall be the amount of the claim allowed by order of the Bankruptcy Court. Thereafter, only upon entry of an order determining the amount of the Allowed Claim and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan. Such distributions shall be made in the manner provided for by the Plan and the terms of any Final Order of the Bankruptcy Court with respect to such Allowed Claim. In the event that the Debtor makes any distributions to creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will commence and be due and payable on the first quarterly payment date following the date of the order allowing such claim, and shall be re-amortized to equal an amount sufficient to fully pay the Allowed Claim.

Unless and until an Undetermined Claim becomes an Allowed Claim, no creditor holding such a claim shall have any claim against the distribution held by Debtor and/or Reorganized Debtor with respect to such claim.

**ARTICLE IV - CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN**

<u>Conditions to Confirmation</u>. Confirmation of the Plan cannot occur unless each of the following conditions precedent has occurred:

1. The Bankruptcy Court shall have approved the Disclosure Statement; and
2. The Confirmation Order is entered by the Bankruptcy Court.

## ARTICLE V - MODIFICATION OF THE PLAN

Section 1127(a) of the Bankruptcy Code permits the Debtor to amend or modify the Plan at any time prior to confirmation. Post-confirmation modifications of the Plan are allowed under § 1127(b) of the Bankruptcy Code, if the proposed modification is offered before the Plan has been substantially consummated or pursuant to an article of the confirmed Plan authorizing the intended modification. The Debtor reserves the right to amend or modify the Plan at any time at which such modification is permitted under the Bankruptcy Code.

In the event Debtor proposes to modify the Plan prior to the Confirmation Order, further disclosures pertaining to the proposed modification will be required only if the Bankruptcy Court finds, after a hearing, that the pre-confirmation modifications adversely change the treatment of any creditor or equity security interest holder who has previously accepted the Plan. If the proposed pre-confirmation modification is material and adverse, or if a post-confirmation modification is sought, Debtor intends to supplement this Disclosure Statement as necessary to describe the changes made in the Plan and the reasons for any proposed modifications.

## ARTICLE VI - CONSIDERATIONS IN VOTING ON THE PLAN

**A.  ALTERNATIVES TO THE PLAN**

Although the Disclosure Statement is intended to provide information to assist in the formation of a judgment as to whether to vote for or against the Plan and although creditors are not being offered through that vote an opportunity to express an opinion concerning alternatives to the Plan, a brief discussion of alternatives to the Plan may be useful. The Debtor believes the proposed Plan to be in the best interests of creditors and the Debtor, and do not favor any alternative to the proposed Plan. In arriving at that conclusion, Debtor assesses the alternatives as follows:

Chapter 7 Liquidation Analysis. The Debtor could convert its case to Chapter 7 and allow a bankruptcy trustee to be appointed to liquidate and distribute assets. In the event that the Bankruptcy Court does not confirm a plan of reorganization in this case, conversion to Chapter 7 will ultimately result. The Debtor believes this alternative to be unsatisfactory for the reasons stated in Article VI. B. below, and that Unsecured Creditors would receive no money or significantly less money than proposed in the Plan in the event that the Debtor's assets are liquidated under Chapter 7 of the Bankruptcy Code.

Dismissal of the Case. Dismissal of the Bankruptcy Case would most likely lead to the same unsatisfactory result as Chapter 7 liquidation.

The Debtor has attempted to set forth alternatives to the proposed Plan. However, Debtor must caution creditors that a vote must be for or against the Plan. The vote on the Plan does not include a vote on alternatives to the Plan. There is no assurance what turn the proceedings will take if the Plan fails to be accepted. If you believe one of the alternatives referred to is preferable to the Plan and you wish to urge it upon the Bankruptcy Court, you should consult counsel.

B.     **LIQUIDATION ANALYSIS**

The likely result of a conversion of the Bankruptcy Case to Chapter 7 liquidation would be a lifting of the automatic stay of 11 U.S.C. § 362(a) to permit foreclosure by OneWest and/or SPCP as to the Property. There is no mechanism under Hawaii law to require a foreclosing lender to bid more than the amount of the indebtedness secured by the property. In the event of a liquidation of the Debtor's assets in a Chapter 7 bankruptcy case, OneWest and/or SPCP would foreclose on the Property, leaving no amounts available for the repayment of any other creditors. Liquidation would result in the Debtor being stripped of its sole asset, and thus it would have no source of income. In the absence of any adversary proceedings, there is no other source of funds that would lead to any distribution to any of the claim classes. When compared to foreclosure of the property and liquidation of the Debtor, the Plan is clearly superior to a Chapter 7 Liquidation Scenario.

C.     **SPECIFIC CONSIDERATIONS IN VOTING**

All of the foregoing give rise in the instant case to the following implications and risks concerning the Plan.

While the Plan provides for certain payments at confirmation, such payments will only apply to Allowed Claims including Claims arising from defaults. Under the Bankruptcy Code, a Claim may not be paid until it is allowed. A Claim will be allowed in the absence of objection.

A Claim, including a Claim arising from default, which has been objected to will be heard by the Bankruptcy Court at a regular, evidentiary hearing and allowed in full or in part or disallowed. While the Debtor bears the principal responsibility for Claim objections, any interested party, including creditors, may file claim objections. Accordingly, payment on some Claims, including Claims arising from defaults, may be delayed until objections to such Claims are ultimately settled.

D.     **DISCLOSURES REQUIRED BY THE BANKRUPTCY CODE**

The Bankruptcy Code requires disclosure of certain facts:

1)     There are no payments made or promises of the kind specified in § 1129(a)(4) of the Bankruptcy Code which have not been disclosed to the Bankruptcy Court.

2)     Counsel to the Debtor has advised the Debtor that the Debtor will require legal services in connection with this case after confirmation which will require reimbursement. Debtor may continue to use Pronske & Patel, P.C. as counsel after confirmation.

E.     **DESCRIPTION OF MANAGEMENT AND CONTROL PERSONS OF DEBTOR**

There will be no changes to the management and control persons of the Debtor, as of the date of filing of the Plan, as a result of the Plan.

## ARTICLE VII - PROVISIONS GOVERNING DISTRIBUTION

Claims. Claims are defined in the Plan. The Plan is intended to deal with all Claims against the Debtor's Estate of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Bankruptcy Court pursuant to § 502(a) of the Bankruptcy Code; however, only those Claims Allowed pursuant to § 502(a) of the Bankruptcy Code will be entitled to and receive payment under the Plan.

Compliance with Plan. Any Person, including a Creditor, which has not, within the time provided in the Plan, performed any act required in the Plan or in the Confirmation Order, shall not be entitled to participate in any distribution under the Plan.

Provisions Covering Distributions. All payments required by the Plan shall be made by Reorganized Debtor, its successor, assign or designee. Payments to be made in cash pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, such mode of payment to be at the sole discretion of Reorganized Debtor.

Distributions and deliveries to holders of an Allowed Claim shall be made to the holder at the address set forth on the latest-filed proof of claim filed by such holder or at the address listed on Debtor's Schedules of such holder if no proof of claim is filed. If any holder's distribution is returned as undeliverable, Reorganized Debtor shall hold the distribution until notified of such holder's new address or the first anniversary of the Effective Date occurs, at which time the undelivered distribution shall revert and become the property of Reorganized Debtor and the Claim shall be discharged and forever barred.

Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for re-issuance shall be made directly to Reorganized Debtor at the Notice Address(es) listed herein in Article XI by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such voided check shall be made on or before the later of the first anniversary of the Effective Date or ninety (90) days after the date of issuance of such check. After such date, all Claims in respect of such checks shall be discharged and forever barred.

## ARTICLE VIII - RETENTION OF JURISDICTION

Purposes. Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction in the following matters after confirmation of the Plan:

  i. to determine any and all objections to the allowance of Claims or Interests, both before and after the Confirmation Date, including any objections to the classification of any claim or interest;

  ii. to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with § 503(b) of the Bankruptcy Code or the Plan;

iii. to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which the Debtor is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

iv. to hear and determine any and all actions initiated by Debtor and/or Reorganized Debtor, whether by motion, complaint or otherwise;

v. to determine any and all applications, motions, adversary proceedings and contested matters pending before the Bankruptcy Court on the Confirmation Date or filed or instituted after the Confirmation Date;

vi. to modify the Plan, the Disclosure Statement or any document created in connection with the Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Bankruptcy Court, the Plan, the Disclosure Statement or any document created in connection with the Plan, in such manner as may be necessary to carry out the purposes and effects of the Plan to the extent authorized by the Bankruptcy Code;

vii. to ensure that the distribution is accomplished in accordance with the provisions of the Plan;

viii. to allow, disallow, determine, liquidate or estimate any claim or interest and to enter or enforce any order requiring the filing of any such claim or interest before a particular date;

ix. to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of the Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate orders to protect Debtor from creditor actions;

x. to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code and/or applicable bankruptcy law;

xi. to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

xii. to determine such other matters as may arise in connection with the Plan, this Disclosure Statement or the Confirmation Order;

xiii. to enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

xiv. to determine all issues relating to the Claims of any taxing authorities, state or federal;

xv. to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

xvi. to enter a Final Order and final decree closing the Chapter 11 Case.

Exclusive Jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of the Plan, the Confirmation Order or the Disclosure Statement and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

Abstention. If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, including the matters set forth in this Article VII, Article IX of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Closing of Case. The Reorganized Debtor shall file an application for final decree and to close the Bankruptcy Case and promptly set a hearing no later than twelve (12) months after the Effective Date, or show cause to the Bankruptcy Court within such period why the Bankruptcy Court should not enter a final decree. Any adversary proceeding that is a Cause of Action shall survive the entry of a final decree and closing of the Chapter 11 Case, and jurisdiction shall be retained over such proceeding.

## ARTICLE IX - MISCELLANEOUS PROVISIONS

Certain Rights Unaffected. Except as otherwise provided in the Plan, any rights or obligations which the Debtor's creditors may have amongst them as to their respective claims or the relative priority or subordination thereof are unaffected.

Binding Effect. As of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, Reorganized Debtor, the holders of the Claims, and their respective successors and assigns.

Discharge of Claims.  Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtor or any of its assets or property to the extent permitted by § 1141 of the Bankruptcy Code.  Upon the Effective Date, all existing Claims against the Debtor shall be deemed to be discharged and all holders of Claims shall be precluded from asserting against the Debtor's assets or property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of claim.

Discharge of Debtor.  Any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor or any of its assets or property.  Upon the Effective Date, the Debtor shall be deemed discharged and released to the extent permitted by § 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (b) a claim based upon such debt is allowed under § 502 of the Bankruptcy Code; or (c) the holder of the claim based upon such debt has accepted the Plan.  The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor.  Pursuant to § 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or the property of the Debtor, to the extent it relates to a claim discharged.

Exculpations.  Debtor's Professional Persons shall not have or incur any liability to any Holder of a Claim for any act, event, or omission in connection with, or arising out of, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

Injunctive Relief.  Except as provided herein, on and after the Confirmation Date, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to § 105 of the Bankruptcy Code from taking any action to correct or enforce any Claim directly or indirectly against the Debtor's assets or property in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

Notices.  All notices, requests or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing, provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the following parties, addressed to:

**Debtor:**

Maluhia Nine, LLC

**Debtor's Counsel:**

> Gerrit M. Pronske
> Pronske & Patel, P.C.
> 2200 Ross Avenue, Suite 5350
> Dallas, TX 75201
> Tel: 214.658.6500
> Fax: 214.658.6509

All notices and request to Holders of Claims and Interests shall be sent to them at the address listed on the last-filed proof of claim and if no proof of claim is filed, at the address listed in Debtor's Schedules.

## ARTICLE X - CONCLUSION

The Debtor respectfully submits that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest of creditors" and "feasibility" requirements, and that it should be confirmed even in the event a class of claims does not vote for acceptance of the Plan. The Debtor believes that the Plan "is fair and equitable" and "does not discriminate unfairly." Additionally, the Debtor believes that the Plan has been proposed in good faith.

The Debtor respectfully requests that this Disclosure Statement be approved for circulation to the creditors of the Debtor and that it be permitted to solicit votes for acceptance of the Plan.

Dated: June 8, 2010.

**MALUHIA NINE, LLC**

By: PRM Management of Illinois, Inc.,
    its Manager

By: PRM Realty Group, LLC,
    its Manager

By: *Peter R. Morris*
    Peter R. Morris, its President

OF COUNSEL:

By: */s/ Gerrit M. Pronske*
Gerrit M. Pronske
State Bar No. 16351640
Rakhee V. Patel
State Bar No. 00797213
Melanie P. Goolsby
State Bar No. 24059841
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: gpronske@pronskepatel.com
Email: rpatel@pronskepatel.com
Email: mgoolsby@pronskepatel.com

**COUNSEL FOR THE DEBTOR**