Hugh M. Ray, III
State Bar No. 24004246
Ruth Van Meter
State Bar No. 20661570
McKool Smith P.C.
600 Travis, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Facsimile: (713) 485-7344

ATTORNEYS FOR SPCP GROUP, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 10-30988-HDH-11 |
| **MALUHIA NINE, LLC a/k/a** | § | |
| **MALUHIA APARTMENT 9, LLC,** | § | Chapter 11 |
| | § | |
| Debtor. | § | |

### OBJECTION OF SPCP GROUP, LLC
### TO THE DISCLOSURE STATEMENT
[Relates to Docket No. 39]

SPCP Group, LLC ("SPCP"), as a secured creditor of Maluhia Nine, LLC a/k/a Maluhia Apartment 9, LLC, Debtor in the above-styled case (the "Debtor"), objects to the Joint Disclosure Statement (the "Disclosure Statement").

### SUMMARY OF OBJECTION

1. The Disclosure Statement is replete with gaps and inadequacies. Because it does not contain "adequate information" as required by Section 1125 of the Bankruptcy Code, it cannot be approved. SPCP seeks entry of an Order denying approval of the Disclosure Statement because (a) it fails to provide adequate information as required by the Bankruptcy Code; and (b) it describes a plan of reorganization (the "Plan") that is unconformable as a matter of law. Approval would be, at best, a costly exercise in futility, which would serve only to delay recovery by the secured creditors.

## FACTUAL BACKGROUND

2.  On February 8, 2010 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.  On February 22, 2010, the Debtor filed its schedules of assets and liabilities (the "Schedules") [Docket No. 8] and its statement of financial affairs (the "SOFA's") [Docket No. 9] On Schedule A - Real Property, the Debtor listed the property located at 28 Malukai Lane, Maui, HI 96753 (the "Property") with a value of $5,800,000.00.

4.  The Debtor is indebted to SPCP as evidenced by certain documents (collectively, the "Indebtedness Documents"), which include, without limitation a certain Loan, Notes and Mortgage Modification Agreement, dated April 8, 2008, as a Limited Guarantor, and used the Property located in Hawaii as collateral to secure its indebtedness to SPCP in that regard.

5.  SPCP is the holder of the Indebtedness Documents. SPCP's claim is secured by a validly perfected second priority security interest and lien in the Property. As of the Petition Date, the SPCP claim was $1,500,000.00.

6.  In addition, the Debtor is indebted to OneWest Bank FSB, as successor in interest to La Jolla Bank, FSB, its Assigns and/or Successors in Interest ("OneWest"). OneWest's claim is secured by a validly perfected first priority security interest and lien in the Property. As of May 13, 2010, OneWest's claim totaled $2,914,132.16, including interest and late charges.

# ARGUMENT AND AUTHORITIES

## A. The Standard for Approval of the Disclosure Statement.

7. Disclosure is the pivotal concept in the reorganization practice under the Bankruptcy Code.[1] A disclosure statement must inform a creditor what it is going to get, when it is going to get it, and what contingencies exist to getting it.[2] Simply stated, the primary purpose of a disclosure statement is to give a creditor the information necessary for it to decide whether to accept or reject a proposed plan of reorganization.[3]

8. Section 1125 of the Bankruptcy Code obligates a plan proponent to submit a disclosure statement with "adequate information," which means:

> Information of a kind, and in sufficient detail, as far as reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that will enable a hypothetical investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.[4] Approval of a disclosure statement should be denied when it does not contain adequate information.[5]

In this case, the Indebtedness Documents are held by SPCP and "adequate information," is the information needed by SPCP to make an informed judgment regarding acceptance or rejection of the Plan.

---

[1] *Westland Oil Dev. Corp. v. MCorp. Mgmt. Solutions, Inc. v. Federal Deposit Ins. Corp.*, 157 B.R. 100, 102 (S.D. Tex. 1993).

[2] *In re Ferretti*, 138 B.R. 16, 19 (Bankr. D.N.H. 1991).

[3] *In re Cajun Electric Power Cooperative Inc.*, 155 F.3d 503, 518 (5th Cir. 1998).

[4] 11 U.S.C. § 1125(a)(1).

[5] *See Menard Sanford v. Mebey (In re A.H. Robins Co.)*, 880 F.2d 694, 696 (4th Cir. 1989).

9. A disclosure statement should contain "[a] all factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the Plan."[6] Among the types of information that generally must be included are the following.

- Events which led to the filing of petition;
- A description of the available assets and their value;
- The anticipated future of the company;
- The source of information stated in the disclosure statement;
- A disclaimer;
- The present condition of the Debtor while in Chapter 11;
- The scheduled claims;
- The estimated return to creditors under Chapter 7 liquidation;
- The accounting method utilized to produce financial information and the name of the persons responsible for such information;
- The future management of the Debtor;
- The Chapter 11 plan or summary thereof;
- The estimated administrative expenses, including attorneys and accounts' fees;
- The collectability of accounts receivable;
- Financial information data, valuations, or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;
- Information relevant to the risk posed to creditors under the plan;
- The actual or projected realizable value from recovery of preferential or otherwise voidable transfers;
- Litigation likely to arise in a non-bankruptcy context;
- Tax attributions to the Debtors;
- Any relationship with affiliates.[7]

10. As discussed below, the Disclosure Statement fails to satisfy the requirements of Section 1125 with regard to almost every one of these factors. Because the Disclosure Statement does not provide creditors with adequate information enabling them to make an informed judgment about the Plan, approval should be denied.

---

[6] *In re Microwave Prod. Of America Inc.*, 100 B.R. 376, 377 (Bankr. W.D. Tenn. 1989) (internal quotations omitted).

[7] *See In re Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996).

### B. The Disclosure Statement Lacks Adequate Information.

11. *Asset Description.* The Disclosure Statement lacks any description or summary listing of the Debtor's assets. A description and value of the Debtor's assets is a critical component to determine feasibility.

12. *Events During the Bankruptcy Case.* In Section D of the Disclosure Statement, "Significant Events in Chapter 11," the Debtor fails to provide adequate information regarding either SPCP's Motion for Relief From Stay on Real Property [Docket No. 20] or the OneWest's Motion for Relief From the Automatic Stay on Real Property [Docket No. 33].

13. *Treatment of Claims.* The Disclosure Statement identifies neither the dollar amount of administrative claims, nor the claimants. These estimates are vital because they indicated the amounts that the Debtor needs to have the Plan be come effective. Regarding Treatment of Claims and Implementation of the Plan, the Disclosure Statement contemplates a Plan that provides for the infusion of new capital. Nothing in the Disclosure Statement or the Plan, however, indicates that any lender is prepared to invest new money in the Debtor in connection with a plan of reorganization. Rather, the Disclosure Statement assumes that the new financing will invest new money, but fails to say what happens if a new investor is not found.

14. *Value.* The Disclosure Statement fails to provide a value for the Property. This failure is fundamental, as without knowing the value of the Debtor's assets, creditors cannot possibly know what the Debtor's Plan is proposing to distribute or whether the Plan or an alternative to the Plan is better (including liquidation and/or sale of the Property). Absent such information, the Disclosure Statement lacks the adequate information needed to enable creditors to make an informed decision regarding the Plan.

15. On the other hand, SPCP has filed an Appraisal of the Property [Docket No. 24], which is incorporated herein. The Appraisal states that the value of the Property is $2,399,000.00 or $2,015,132.10 less than the secured liens on the Property. The Debtor must provide credible evidence of the Property and not just merely a statement valuing the Property.

16. *Feasibility*. Although the Disclosure Statement assumes new participation by the "new investor", it fails to provide detailed information regarding this investment. The Disclosure Statement does not indicate whether a new investor has been contacted about, much less agreed to, this participation.

17. *Risks to Creditors*. The Disclosure Statement does not provide adequate information regarding risks that the Debtor will be unable to perform under the Plan and that five years from now, the Property will actually sell. This disclosure of risks is critical because whatever risks and delays that might be associated with liquidation may be far less than the risks and delays attendant to the Debtor's plan to force SPCP and OneWest to wait until 2015 to see what the Property may be worth. Immediate liquidation, by contrast, could result in prompt distribution to creditors. The Debtor provides no assurance whatsoever that it will be able to make future payments or that the Property will indeed sell in five years. Consequently, the Debtor receives all the benefits, while putting nothing at risk, and SPCP and One West (among other creditors) get all the risk.

18. *Avoidance Actions*. The Disclosure Statement states that the Debtor is still investigating its causes of actions. As such, the Disclosure Statement fails to identify (a) payments made to insiders within the year before the bankruptcy filing; (b) payments made to creditors within the ninety days before the bankruptcy filing; or (c) potential avoidance claims. This omission is not acceptable considering the vague and evasive information previously

provided by the Debtor in its schedules and monthly operating reports regarding payments to the Debtor's insiders.

### C. This Court Should Not Approve the Disclosure Statement for an Unconfirmable Plan.

19. Where a plan on its face does not comply with the basic requirements of the Bankruptcy Code, courts have refused to approve the disclosure statement rather than engage in the futile exercise of soliciting and pursuing the plan. *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("If the disclosure statement describes a plan that is so 'fatally flawed' that confirmation is 'impossible,' the court should exercise its discretion to refuse to consider the adequacies of disclosures.") (citations omitted); *In re Brass Corp.,* 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996) ("Disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible.") (citation omitted).

20. Sections 1129(a)(1) and (2) of the Bankruptcy Code provide that a court shall confirm a plan if "[t]he plan complies with applicable provisions of this title" and "[t]he proponent of the plan complies with the applicable provisions of this title." As shown below, numerous provisions of the Plan do not comply with the Bankruptcy Code, and the Plan proponents have failed to comply with the Bankruptcy Code because they have denied creditors notice and opportunity to object.

21. The Disclosure Statement fails to provide adequate means for the Plan's implementation. If a plan of reorganization, on its face, is not confirmable as a matter of law, disapproval is appropriate. Although the hearing on approval of disclosure statement is not a substitute for a hearing on plan confirmation, a disclosure statement should not be approved where the plan is not capable of being confirmed. Indeed, a bankruptcy court's approval of a

disclosure statement is an early step in the confirmation process, followed by time-consuming and expensive solicitation procedures and confirmation hearings.[8]  As a matter of judicial economy, approval of the Disclosure Statement will only harm the estate and its creditors.  This Court should not allow the solicitation process to proceed when it is clear that the only possible result is further delay and expense because the Plan cannot be confirmed.

22.     The Disclosure Statement should not be approved because it contains inadequate information regarding the Plan's compliance with Section 1129 of the Bankruptcy Code.  Section 1129(a)(11) requires the Debtor to demonstrate that confirmation of the Plan is "not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor…unless such liquidation or reorganization is proposed by the plan."[9]  The purpose of Section 1129 is to prevent visionary schemes that promise creditors and equity security holders more under a proposed plan than a debtor can possibly provide after confirmation.[10]

23.     Here, the Debtor fails to include any information on the status of new financing to fund the Plan.  This is a fatal flaw.  Also, the Debtor fails to show how the Plan complies with the fair and equitable standards governing "cramdown" in the Bankruptcy Code.  If SPCP votes against the Plan, this Court cannot confirm the Plan unless the Plan does not "discriminate unfairly, and is fair and equitable."[11]  The proposal to sell the Property, if the Debtor cannot then pay One West and SPCP in full, does not satisfy Section 1129 and therefore is not fair and equitable

---

[8] *In re John Hancock Mut. Life Ins. Co. v. Rte 37 Bus. Park Assoc's*, 987 F.2d 154, 159 (3d Cir. 1993); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992).

[9] 11 U.S.C. § 1129(a)(11).

[10] *In re Haardt*, 65 B.R. 697, 701-02 (Bankr. E.D. Pa. 1986).

[11] 11 U.S.C. § 1129(b)(2).

24. The Plan is also unconfirmable because it requires PRM Realty Group, LLC ("PRM") and the Equity Owner to guaranty the obligations of the Debtor. The Debtor has not provided the form of guaranty, so the exact nature of these non-dischargeable guaranty obligations is unclear. What is also unclear is whether the Debtor intends to give the creditors of PRM notice, opportunity to object, or a hearing before requiring them to incur these new obligations which are to be non-dischargeable by the Debtor.

25. The concept of "notice" is a fundamental right that underlies almost every proceeding in a bankruptcy case. In this case, creditors of PRM and the Equity Owner are entitled to notice of the proposed guaranties under:

 (a) 11 U.S.C. § 363(b) which requires "notice and a hearing" before permitting a debtor in possession to use property of an estate outside of the ordinary course;

 (b) 11 U.S.C. § 364(a) which permits a debtor in possession to incur unsecured debt without a hearing only in the ordinary course of business; and

 (c) Bankruptcy Rule 2002(a)(2), which requires a debtor to provide at least 20 days notice of the proposed use of property of an estate other than in the ordinary course of business.

The Debtor's Plan fails to comply with these provisions of the Bankruptcy Code and Bankruptcy Rules and is thus not confirmable on its face.

26. The Court and parties take guidance from the recent Supreme Court *Espinosa* case—when the justices reversed Circuit Court precedent that permitted courts to approve a plan without reading it to ensure it complies with the law. Rather, the Supreme Court held "Thus, contrary to the Court of Appeals' assertion, the Code makes plain that bankruptcy courts have

the authority -- indeed, the obligation -- to direct a debtor to conform his plan to the requirements of [the law]."[12]

27. Section 503(c)(3) of the Bankruptcy Code provides that obligations outside the ordinary course of business and not justified by the facts and circumstances of the case will not be allowed or paid. As to PRM and the Equity Owner, there is no discussion in the Disclosure Statement as to whether it is in the "ordinary course" of the debtors to grant non-dischargeable guaranties (or that the facts and circumstances justify such guaranties outside the ordinary course). Indeed, without Court approval, such post-petition guaranties would likely be avoidable under 11 U.S.C. § 549.

28. In addition, there has been no *Lasalle* test for the value of the equity, for the preservation of old equity's ownership of the Reorganized Debtor, or the disclosure of the amount of consideration for the retention of equity.

## RESERVATION OF RIGHTS

29. Because of the vague language and the fact that the Debtor has not filed any exhibits, SPCP reserves the right to object to any supplement or modification to the Disclosure Statement.

## PRAYER

**WHEREFORE**, SPCP requests that this Court enter an order sustaining its objections to the Disclosure Statement and granting such other and further relief as this Court may deem proper, both at law and in equity.

---

[12] *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1381 (2010).

**DATED:** July 8, 2010

Respectfully submitted,

McKOOL SMITH P.C.


By:   */s/ Hugh M. Ray, III*
      HUGH M. RAY, III
      State Bar No. 24004246
      RUTH VAN METER
      State Bar No. 20661570
      McKool Smith P.C.
      600 Travis, Suite 7000
      Houston, Texas 77002
      Telephone: (713) 485-7300
      Facsimile: (713) 485-7344

ATTORNEYS FOR SPCP GROUP, LLC


## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2010, a true and correct copy of the foregoing document has been served via the ECF system and by email to Gerrit Pronske, counsel for Debtor, and by facsimile to Mary Fran Durham.
.

      */s/ Hugh M. Ray, III*
      Hugh M. Ray, III