

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.



**United States Bankruptcy Judge**

**Signed October 21, 2010**

---

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MALUHIA EIGHT, LLC, | § | Case No. 10-30986-HDH-11 |
| MALUHIA ONE, LLC, a/k/a | § | Case No. 10-30987-HDH-11 |
| MALUHIA APARTMENT 1, LLC, and | § | |
| MALUHIA NINE, LLC, a/k/a MALUHIA | § | Case No. 10-30988-HDH-11 |
| APARTMENT 9, LLC, | § | |
| | § | |
| Debtors. | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### ON CONFIRMATION HEARINGS

Over the course of several days the Debtors put on their case for confirmation of their amended plans. The secured creditors in each case objected and also offered evidence in opposition to confirmation.

Earlier, the secured creditors objected to the Debtors' disclosure statements, claiming that the plans were not confirmable on their face. *See In re Mahoney Hawkes, LLP*, 289 B.R. 285, 294

(Bankr. D. Mass. 2002); *see also El Comandante Mgmt. Co. LLC*, 359 B.R. 410 (Bankr. D. P.R. 2006).

The primary objections at the time of the disclosure statement hearings were to the interest rate proposed and the feasibility of the plans. Both issues are fact specific, requiring evidence. For these reasons, the Court approved the disclosure statements and allowed the Debtors to solicit votes on the plans.

Now, both sides have offered evidence on the primary issues, and also evidence and argument on value and on other, more technical aspects of the plans. In addition, there is a ballot issue in the case of Maluhia Nine, LLC.

**Burden on the Debtors**

To obtain confirmation, the Debtors must demonstrate that their amended plans satisfy the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence. *In re Briscoe Enters., Ltd. II*, 994 F.2d 1160 (5th Cir. 1993).

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. In determining this feasibility, a debtor's burden is to prove a reasonable probability of success, not a guarantee. *See id.*; *see also In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997). To establish the feasibility of a plan, the debtor must present proof through reasonable projections that there will be sufficient cash flow to fund the plan. Such projections cannot be speculative, conjectural or unrealistic. *In re M & S Assocs.*, 138 B.R. 845, 849 ( Bankr. W.D. Tex. 1992).

Section 1129(a)(8) requires that each class of claims and interests is unimpaired or has accepted the plan. *See* 11 U.S.C. § 1129(a)(8). The court may confirm a plan that meets all the requirements of section 1129(a) other than that of section 1129(a)(8), if the court determines that the plan is fair and equitable and does not discriminate unfairly as to dissenting classes. *See In re General Electrodynamics Corp.*, 368 B.R. 543, 550 (Bankr. N.D. Tex. 2007). The secured creditors contend that the plan is not fair and equitable, and therefore, cannot be confirmed over their objections.

**Expert Testimony**

The plans provide a 4% pay rate and a 1% deferred interest component. The Debtors supported the interest rate with the testimony of Peter Morris, the principal of all three Debtor entities. The secured creditors countered with an expert witness who opined that the proper interest rate for the treatment of their claims would be akin to the rate paid on "junk bonds."

The Debtors then engaged an expert, Dr. Michael Cragg, who was not disclosed as a witness prior to the confirmation hearing, to rebut this testimony. This Court limited the Debtors' use of this witness strictly to rebutting the secured creditors' expert and did not allow him to opine as to an appropriate interest rate for the plans. The Court did not believe it to be fair or a proper use of rebuttal testimony to allow the addition of a witness not previously disclosed, after the confirmation trial had begun, to offer evidence that more properly should have been offered in the case in chief, with his report and credentials exchanged before the trial commenced. *See Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764 (5th Cir. 1991); *see also Page v. Barko Hydraulics*, 673 F.2d 134, 140 (5th Cir. 1982) (district court properly excluded rebuttal evidence intended to be used to cure defects in plaintiff's case-in-chief). In rebuttal, Dr. Cragg did raise a number of issues with the "junk bond" rate

suggested by that expert and with his methodology, and this Court has carefully considered Dr. Cragg's testimony.

**Value of Properties**

The Debtors own three lots in Hawaii.  The lots are in a very nice area and are considered by Forbes magazine, and, frankly, the parties and experts, as very special properties.  Mr. Morris has been involved in the development for many years.  He has sold a number of lots in the project and is down to the three lots, one owned by each of the Debtors.

The preponderance of the evidence suggests that the properties have a relatively small equity cushion protecting the secured claims.  This conclusion is derived from the testimony and appraisals of the experts offered by creditors Compass Bank and OneWest Bank, FSB, the present national economy, the comparables used in the appraisals, and the stage of development of the three properties.

SPCP Group, LLC ("SPCP") offered the testimony of their appraiser, Mr. Yamamura, on the value of the Maluhia Nine property, but his testimony is discounted because the appraisal offered by SPCP was performed by another appraiser in the same office and only reviewed by Mr. Yamamura. That appraisal was offered into evidence without objection at first, and then Debtors' counsel sought to exclude it.  The Court denied that request, as it was untimely, but will give that appraisal little weight in these findings.

Mr. Morris suggested and the Debtors' bankruptcy pleadings claim that the Debtors have substantial equity in the properties.  The Debtors engaged Raymond Kirchner after the hearing commenced, to offer rebuttal testimony regarding the valuation of the property by the secured creditors' experts.  This Court limited Mr. Kirchner's testimony strictly to rebuttal of the valuations

offered by the secured creditors and did not allow him to opine as to the values, as he was not offered

in the Debtors' case in chief.   As with Dr. Cragg, this Court did not believe that such testimony by

a witness not on the original witness list would be fair to the secured creditors, who, prior to trial,

did not have an opportunity to review his work or credentials.   However, this Court has considered

Mr. Kirchner's testimony carefully in reaching a conclusion that the Debtors have a slight equity

cushion in all three properties and in rejecting the SPCP appraisal.

**Treatment of the Secured Claims**

The Court is concerned with the treatment of secured claims under the plans and that too

much risk is placed on the secured creditors who are asked, in essence, to allow the Debtors to

gamble with their money with little upside return.

First, the interest rate proposed in the plans is improper under the circumstances.  Although

the Debtors' principal and attorneys dispute the characterization, the proposed rate is really a "pay

and accrue" rate.   The lenders receive 4% and accrue 1% to be paid at the end.   Although negative

amortization plans are not outright prohibited, they are looked at closely because the lenders are

carrying another risk of repayment with the accrual, rather than the payment of interest.   *See M &*

*S Assocs.*, 138 B.R. 845, 850 ( Bankr. W.D. Tex. 1992).   In the *M & S Associates* case, Judge King

goes through a through analysis of the feasibility and equality of a similar negative amortization plan,

and states:

> A reorganization plan which provides for negative amortization is not
> per se inequitable and a bar to confirmation, but may be highly
> suspect. . . . In considering the confirmation of a plan with a negative
> amortization feature, two commentators have observed that courts
> have "generally performed either a 'feasibility' or 'fair and equitable'
> analysis of the plan if the treatment is rejected by the affected class."
> Gerrit M. Pronske & T. Patrick O'Rourke, *Fifth Circuit*
> *Survey-Bankruptcy*, 21 Tex. Tech L. Rev. 111, 125-126 (1990). "In

> determining whether deferral of interest is feasible, the court must not be left to speculate as to whether the required payments can be made both during the term of the plan and at the proposed maturity date." *Id.* at 130. Messrs. Pronske and O'Rourke further suggest that although some degree of speculation as to income producing real estate is inevitable, "where the level of speculation is high enough to place a substantial burden of the debtor's risk of failure on the secured creditor, the court should deny confirmation." *Id.* at 133. This Court agrees.

*M & S Assocs.*, 138 B.R. at 850. Similarly, the level of speculation is high in the present plans.

In addition, the rate is simply too low. The *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004) approach and the approach taken by this Court in *SJT Ventures*, No. 09-36758, 2010 WL 3342206 (Bankr. N.D. Tex. August 25, 2010), would require a rate higher than the 4 + 1 rate given in the plans. The secured creditors' expert places that formula calculation slightly in excess of 9%, and opined that the notes proposed in the plans should carry a much higher rate. This Court believes that the "junk bond" rate offered by that expert would be too high. The notes are secured by real property which, in each case, slightly exceeds the value of the secured claims. The notes offered under the plans are not "junk bonds."

For the purpose of this ruling, the Court finds that a proper rate of interest for the type of loan involved in the plans would be around 7%, which starts with the five-year treasury rate and builds upon that for risk.

Repayment of the secured creditors is risky and depends on an uncertain Hawaiian real estate market, and an unstable national economy. In addition, there is risk that the properties will go down in value. In fact, testimony in the record suggests that one of the properties has decreased in value since March 2010. Finally, there is substantial risk that the overall scheme of the plans, to hold and

develop the properties for the building of high-end mansions and sale in five years or less, will not happen.

**Feasibility**

"Section 1129(a)(11) codifies the feasibility requirement and requires that confirmation of the plan is not likely to be followed by liquidation or the need for further financial reorganization, unless such liquidation or reorganization is proposed in the plan." *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997). The plans proposed by the Debtors provide that the Debtors will raise, within sixty days after confirmation, funds necessary to pay debt service to the secured creditors for one year. This process will continue on an annual basis for a total of five years. At the present time, the Debtors really have no cash. Mr. Morris testified that he has not begun soliciting funds for the plan and has no commitments.

The plans provide this series of five one-year notes, with the raising of funds for debt service on an annual basis, and final payment to be made upon completion and sale of houses on the three properties.

Debtors have placed the cart before the horse. At confirmation, the Debtors must show by a preponderance of the evidence that they can fund the plan, not obtain an opportunity to do so. As the Debtors have little funds on hand, no commitments for funding, and have not even begun the process, the Debtors did not meet the burden of proof on feasibility at confirmation. *See In re Save Our Springs (S.O.S.) Alliance, Inc.*, 388 B.R. 202, 240 (Bankr. W.D. Tex. 2008) ("without evidence of a firm commitment of financing, a Plan does not meet the feasibility requirement for confirmation"); *see also In re Ralph C. Tyler, P.E., P.S., Inc.*, 156 B.R. 995, 997 (Bankr. N.D. Ohio 1993) ("At the point of confirmation, this source of funding must be shown to be firm as it goes directly to feasibility.").

While Mr. Morris has certainly raised funds in the past, the present national economy is different than any we have seen before. And, Mr. Morris' confidence in raising money was based on the proposed 4 + 1 rate provided in the plan, not the approximate 7% rate that would be required.

**Other Plan Concerns**

The parties raised other objections, and the Court will address a few, in the event that an appeal is filed.

The Debtors did not establish the amount of administrative claims. Mr. Morris was very unclear in his testimony as to the amounts the Debtors owe experts and other professionals, which entities owe such amounts, and the source of their payment. The Debtors should have proven those amounts and established that they could pay them in cash on the effective date. *See* 11 U.S.C. § 1129(a)(9)(A).

In Maluhia Nine, there is a voting issue. The Homeowners Association did not cast a timely ballot. SPCP and One West sought to defeat the plan on that issue. However, when the confirmation hearing started, the Debtor had a ballot from the Homeowners Association based on an agreement reached after the voting deadline established by the Court. *See* Fed R. Bankr P. 3017. After the confirmation hearing had commenced, SPCP and One West sought to designate that ballot as being cast in bad faith and the Debtor sought leave to allow the late filed ballot.

The evidence offered by the Debtor does not establish cause to allow the late filed ballot. The Homeowners Association had the ballot in time to vote. It did not vote, until it reached the deal with the Debtor.

As an aside, in their pleadings, SPCP and One West, and in open court SPCP's counsel, made rather strong accusations against the Debtor regarding this ballot. They offered little evidence in

support of their designation motion.  Parties in a bankruptcy case negotiate all the time and make

trades, which are brought before the court, like this one.  The Court sees no evidence of bad faith.

However, the Debtor did not show cause to extend the voting deadline after it had expired.  The deal

struck with the Homeowners Association should have been reached before the ballot deadline.  *See*

*In re Gulfstar Indus., Inc.*, 236 B.R. 75, 78 (M.D. Fla. 1999); *see also In re Torgro Atlantic City,*

*LLC,* No. 08-13458, 2009 WL 1288367, *17 (Bankr. D. N.J. May 7,  2009).  Thus, the Debtor does

not have an accepting class for Maluhia Nine.

Based on the foregoing, confirmation will be denied.  Counsel for the secured creditors should

upload orders denying confirmation in each of the cases within 7 days from the date of entry of these

findings and conclusions.

###End of Findings and Conclusions###